IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
ERIC DARDEN, et. al.,              )
                                   )
          Plaintiffs,              )
                                   )
     v.                            )     1:19cv1050
                                   )
GOVERNOR ROY A. COOPER, III,       )
 et al.,                           )
                                   )
          Defendants.              )
```

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

This lawsuit arises out of the murder of three North Carolina prison employees at the hands of four inmates during a failed attempt to escape Pasquotank Correctional Institution ("PCI") in October 2017. Plaintiffs represent the decedents' estates and claim multiple violations of their Fourteenth Amendment rights under 42 U.S.C. § 1983 by seventeen named Defendants across two state agencies and the state's executive branch: North Carolina Governor Roy A. Cooper, III; The North Carolina Department of Public Safety ("DPS") and employees Erik A. Hooks, Frank L. Perry, Kenneth Lassiter, George Solomon, W. David Guice, Felix Taylor, Colbert Respass, Fay D. Lassiter, Nicole E. Sullivan, Annie Harvey, Joseph Harrell, and Marquis Betz, all in their individual and official capacities; and Correction Enterprises ("CE") and employees Karen Brown and Robert Leon, in their individual and official capacities.

Before the court is Defendants' motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (6). (Doc. 17.) Plaintiffs responded in opposition and suggested that granting leave to file a second amended complaint would be more appropriate than granting dismissal. (See Doc. 20 at 4.) However, Plaintiffs have not filed for leave to amend. For the reasons set forth below, Defendants' motion will be granted.

## I. BACKGROUND

The allegations, taken in the light most favorable to Plaintiffs, show the following:

Decedents Veronica Darden, Wendy Shannon, and Justin Smith were employed at PCI. (Doc. 10 ¶ 3.) On October 12, 2017, at least twelve close-custody prisoners and eighteen medium-custody prisoners were working in a sewing plant operated by CE, located within the perimeter fence of PCI. (Id. ¶ 4.) The prisoners who worked in the plant were violent and had previously engaged in serious misconduct. (Id. ¶¶ 8, 39(lvii–lix).) In contravention of DPS and CE policy, and due to underlying staffing shortages, correctional supervisors charged Smith with guarding all thirty of the inmates in the plant alone. (Id. ¶¶ 4, 5.) On that day, four violent inmates gained unfettered access to deadly tools and closed, unguarded hallways within the plant and attempted to escape. (Id. ¶¶ 3, 5.) The four inmates attacked Darden, Shannon,

2

Smith, and others with claw hammers and scissors.  (Id. ¶ 5.)  Due to ineffective security policies, monitoring, training, and equipment, the attack was allowed to continue for over twenty minutes before help arrived.  (Id. ¶ 6.)  Darden, Shannon, and Smith ultimately died of the injuries inflicted upon them.  (Id.)  At the time of the attack, the three guards were locked inside the plant.  (Id. ¶ 5.)

Plaintiffs charge that institutional failures contributed to the danger for the inmates' violent escape attempt.  (Id. ¶ 8.)  These failures include poor hiring and retention practices; severe understaffing; improper training; lack of safety equipment; lax, unenforced, and ineffective safety and security procedures; and inadequate supervision of staff and inmates.  (Id. ¶¶ 5, 8, 39.)

**II. ANALYSIS**

   **A. Standard of Review**

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. (8)(a)(2).  Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

3

Twombly, 550 U.S. 544, 570 (2007)).[1]  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the plaintiff's favor.  Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).  "Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegation 'to raise a right to relief above the speculative level' so as to 'nudge[] the[] claims across the line from conceivable to plausible.'" Sauers v. Winston-Salem/Forsyth Cty. Bd. Of Educ., 179 F. Supp. 3d 544, 550 (M.D.N.C. 2016) (alteration in original) (quoting Twombly, 550 U.S. at 555).  "[T]he complaint must 'state[] a plausible claim for relief' that permit[s] the court to infer more than the mere possibility of misconduct based upon 'its judicial experience and common sense.'"  Coleman v. Md. Ct. App., 626 F.3d 187, 190 (4th Cir. 2010) (alterations in original) (quoting Iqbal, 556 U.S. at 679).  Thus, mere legal conclusion are not accepted as

---

[1] To the extent Defendants move to dismiss based on sovereign immunity, that raises an issue of personal jurisdiction, such that Federal Rule of Civil Procedure 12(b)(2) is the proper vehicle.  Simmons v. Corizon Health, Inc., 122 F. Supp. 3d 255, 268 (M.D.N.C. 2015).  Thus, any motion to dismiss based on sovereign immunity will be considered under Rule 12(b)(2).

4

true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

   **B.   Eleventh Amendment Sovereign Immunity**

Defendants argue they are entitled to sovereign immunity for the claims against DPS, CE, and named Defendants in their official capacities. (Doc. 18 at 7–9.) Plaintiffs respond that it is inappropriate to consider sovereign immunity in a motion to dismiss. (Doc. 20 at 6.) Plaintiffs further argue that Defendants are not eligible to plead sovereign immunity because the State of North Carolina is not a party to this case. (Id.) Both of Plaintiffs' arguments fail.

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has held that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415 U.S. 651, 663 (1974). A suit against a state official in his or her official capacity is a suit against the official's office and is therefore a suit against the state itself. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).

5

Agencies, instrumentalities, and arms of the state receive the same protection as the state itself. Regents of Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997). The touchstone for considering an entity as an agency of the state is whether judgments rendered against that entity would be paid from the state's treasury. Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 48–50 (1994). "Given the State's unique dignitary interest in avoiding suit, . . . Eleventh Amendment immunity questions [should be resolved] as soon as possible after the State asserts immunity." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 482 (4th Cir. 2005) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)) (resolving questions of sovereign immunity on motion to dismiss).

In the present cause of action, Plaintiffs name two North Carolina agencies as parties to the litigation: NC DPS and CE. Both are entitled to sovereign immunity. DPS is an agency of the State of North Carolina that is funded by the North Carolina treasury. See N.C. Gen. Stat. § 143B-601 (2020); see also Biggs v. N.C. Dep't of Pub. Safety, 953 F.3d 236, 241 (4th Cir. 2020) (finding DPS to be an agency of the state and entitled to sovereign immunity). CE, a subdivision of DPS, is also an agency of the State of North Carolina whose funds are held by the state treasury. See N.C. Gen. Stat. §§ 148-128, 130 (2020) (establishing CE as a subdivision of DPS and explaining "[a]ll revenues . . . produced by Correction Enterprises shall be deposited with the State

6

Treasurer"); see also Candillo v. N.C. Dep't of Corr., 199 F. Supp. 2d 342, 349 (M.D.N.C. 2002) (applying North Carolina's sovereign immunity to a subdivision of a state agency). Any judgment against either DPS or CE would be paid from the state treasury, such that classification as state agencies is appropriate. As agencies of North Carolina, both DPS and CE are entitled to sovereign immunity. See Biggs, 953 F.3d at 241.

Plaintiffs also name fifteen state employees in their official capacities as parties to this litigation. Thirteen of these employees worked at DPS during or leading up to October 2017. (Doc. 10 ¶¶ 13-26.) The other two named employees worked at CE in October 2017. (Id. ¶¶ 32, 33.) Each of these Defendants was named in his or her official capacity as an employee of DPS or CE. As a suit against an individual in his official capacity is a suit against the state itself, these employees are entitled to sovereign immunity to the extent the claims against them are made in their official capacities. Will, 491 U.S. at 71; Fauconier v. Clarke, 966 F.3d 265, 279-80 (4th Cir. 2020).

There are three exceptions to sovereign immunity: congressional abrogation, waiver, and *Ex parte Young*. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 55, 59 (1996); Ex parte Young, 209 U.S. 123 (1908). None of these exceptions applies here. First, it is well-established that Congress did not abrogate

7

sovereign immunity through the enactment of § 1983.  Will, 491 U.S. at 66.  Second, Defendants have not taken — nor do Plaintiffs allege — any actions that could constitute a waiver of sovereign immunity.  In fact, Defendants have asserted their sovereign immunity at their first opportunity.  (See Doc. 17.)  Lastly, *Ex parte Young*, which holds that the Eleventh Amendment does not bar a suit against a state official for prospective injunctive relief, Ex parte Young, 209 U.S. at 159–60, Lynn v. West, 134 F.3d 582, 587–88 (4th Cir. 1998), does not apply here because Plaintiffs are seeking only compensatory damages (Doc. 10 at 23, 24).

Therefore, Defendants' motion to dismiss the claims against DPS, CE, and the individual Defendants in their official capacities on the grounds of sovereign immunity will be granted.

**C.  Failure to State a Claim under § 1983**

As to the remaining claims, the court will consider whether Plaintiffs have sufficiently stated a claim under § 1983.  To state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person[2] acting under color of state law."  West v. Atkins, 487 U.S.

---

[2] Although already addressed on the grounds of sovereign immunity, it is worth noting that the claims against DPS, CE, and Defendants in their official capacities would fail here as well.  Contrary to Plaintiffs' assertions, the Monell standard does not apply to the present case because Defendants are not local government agencies, but rather state agencies.  See Monell v. New York City Dep't of Social Servs., 436 U.S.

8

42, 48 (1988). Here, Plaintiffs bring two § 1983 claims, the first pursuant to the Fourteenth Amendment generally and the second pursuant to the Fourteenth Amendment specifically in relation to negligent training, retention, and supervision. (Doc. 10 at 13, 21.)

Both of Plaintiffs' Fourteenth Amendment claims are based on a deliberate indifference theory. First, Plaintiffs claim their rights under the Fourteenth Amendment generally were violated because "Defendants acted with deliberate indifference and/or reckless disregard to Plaintiff's safety and well being in violation of Plaintiff's Fourteenth Amendment rights, more specifically, their rights to life, liberty, and property." (Id. ¶ 40.) Second, Plaintiffs claim their rights were violated through negligent training, retention, and supervision under the Fourteenth Amendment because, "Defendants' failure to hire, retain, and/or supervise officers and employees at [PCI] amounted to a deliberate indifference and/or a reckless disregard to Plaintiff's constitutional rights." (Id. ¶ 49.) Plaintiffs base their claim on Defendants' inaction as having "placed [the decedents] in dangerous conditions."[3] (See id. ¶ 3.) Plaintiffs

---

658 (1978). States and state officials are not "persons" for the purposes of § 1983. 491 U.S. Will, 491 U.S. 70-71.

[3] The only possible exception is Plaintiffs' claim that the decedents were "locked in" at the time of the attack. (See id. ¶¶ 5, 40, 48.) However, Plaintiffs' complaint is bereft of any facts that would indicate

9

do not allege any affirmative actions by Defendants that resulted in a constitutional deprivation nor do they allege that Defendants had an intent to harm. (See id. ¶ 39.)

While "the Due Process Clause in particular limits the government's power to interfere with individual life, liberty or property[,] it does not act as a 'guarantee of certain minimal levels of safety and security.'" Rutherford v. City of Newport News, VA., 919 F. Supp. 885, 891 (E.D. Va. 1996) (citing DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 195 (1989)). Due Process generally "does not require the state to protect individuals from harm caused by third parties." Rutherford, 919 F. Supp. at 890.

Deliberate indifference may amount to a Fourteenth Amendment substantive due process violation where the government is required "to take care of those who have already been deprived of their liberty" — such as pretrial detainees, persons in mental institutions, convicted felons, and persons under arrest. Collins v. City of Harker Heights, Tex., 503 U.S. 115, 127 (collecting cases). However, this does not apply in a voluntary employment context. See, e.g., id. at 127–28 (1992); Slaughter v. Mayor & City Council of Balt., 682 F.3d 317, 321–22 (4th Cir. 2012); Washington v. District of Columbia, 802 F.2d 1478, 1482 (D.C.

---

that the situation was due to Defendants' affirmative actions or that the situation amounted to a deprivation of the decedents' liberty.

Cir. 1986) ("Prison guards, unlike the prisoners . . . are not held in state custody. Their decision to work as guards is voluntary. If they deem the terms of their employment unsatisfactory, e.g., if salary, promotion prospects, or safety are inadequate, they may seek employment elsewhere. The state did not force appellant to become a guard, and the state has no constitutional obligation to protect him from the hazards inherent in that occupation.") To support a due process violation in the context of voluntary employment with the government, it must be alleged that the government acted with an intent to harm. Slaughter, 682 F.3d at 322.

As Plaintiffs' decedents were voluntarily employed with DPS, the state did not have a constitutional obligation to provide its employees with certain minimal levels of safety. Further, Plaintiffs have not made any claims or alleged any facts that would suggest that Defendants acted with an intent to harm. Taken together, Plaintiffs have failed to allege a plausible violation of their decedents' Fourteenth Amendment due process rights.[4]

---

[4] For these same reasons, Defendants' defense of qualified immunity succeeds. In order to overcome a defense of qualified immunity, it must be shown that (1) the facts alleged or shown by the plaintiff made out a violation of a constitutional right, and (2) the right was "clearly established" at the time of the defendant's misconduct. Pearson v. Callahan, 555 U.S. 223, 232 (2009). Without alleging a cognizable constitutional violation, Plaintiffs cannot overcome this defense. See also Katz, 533 U.S. at 201 (questions of qualified immunity should be resolved as soon as possible); Siegert v. Gilley, 500 U.S. 226, 232–33 (1991) (dismissing on the basis of qualified immunity).

11

Additionally, Plaintiffs have failed to allege facts that would establish a *prima facie* case for personal or supervisory liability for any of the named Defendants. To establish personal liability under § 1983, the plaintiff must "affirmatively show[] that the official charged acted personally in the deprivation of the plaintiff's rights." Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (internal quotation marks omitted). Mere knowledge of such a deprivation will not suffice. Id. Rather, the official's "own individual actions" must have "violated the Constitution." Iqbal, 556 U.S. at 676.

To establish supervisory liability, it must be alleged that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

Plaintiffs have not alleged facts to support either liability. As noted by Defendants, beyond listing the individual Defendants' job titles, Plaintiffs tie none of their allegations to specific individual Defendants. For each of the individual

12

Defendants, Plaintiffs simply report that "[a]t all times material hereto, [named Defendant] had authority over the control, supervision, and/or ownership of [PCI] and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein."  (See Doc. 10 ¶¶ 13–34.)  These conclusory statements do not sufficiently connect Defendants to the alleged deprivations.  And although Plaintiffs list over fifty failures within PCI as contributing to the guards' murders, at no point do Plaintiffs connect any of these failures to any particular Defendant.  (See id. ¶ 39.)  As Plaintiffs have failed to allege any facts that would tend to show any Defendant acted personally in the deprivation of their decedents' rights, Plaintiffs' complaint does not establish grounds for finding these Defendants could be personally liable.

Plaintiffs have also failed to allege facts that would support a finding of supervisory liability.  Even accepting Plaintiffs' conclusory statements that Defendants had "knowledge and involvement" of the relevant facts (id. ¶¶ 13–34), Plaintiffs have alleged no facts that would tend to show inadequacy in a given supervisor's response.  Further, Plaintiffs' barebones report of the facts shows no "affirmative causal link" between any supervisor's inaction and the murder of the guards.  As such, Plaintiffs have not sufficiently pleaded facts that would establish grounds for supervisor liability.

13

In sum, Plaintiffs have failed to allege a constitutional violation under § 1983. They have also failed to allege facts that would subject the Defendants to either personal or supervisory liability under § 1983. As such, Plaintiffs have not stated a claim upon which relief can be granted, and Defendant's motion to dismiss will be granted.

**D.  Leave to Amend**

Plaintiffs have not explicitly sought leave to amend their complaint. However, their response suggests that leave to amend would be more appropriate in this case than dismissal. (See Doc. 20 at 4.)

Under Federal Rule of Civil Procedure 15(a)(2), once 21 days elapses from service of a motion to dismiss, a plaintiff may amend a pleading only with the opposing party's consent or leave of court. Leave should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend will be denied only if (1) the amendment would prejudice the opposing party, (2) there is bad faith on the part of the moving party, or (3) the amendment would be futile. Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc).

While leave may be freely granted, a "request for a court order must be made by a motion," which must state the grounds for seeking the order and the relief sought. Fed. R. Civ. P. 7(b)(1). This district's local rules require that a separate motion for

14

leave be filed and a proposed amended pleading be attached to the motion. L.R. 15.1. The purpose is to avoid having cases thrust into limbo on such generalized requests that may later prove unsupported. Robinson v. Pepsi Bottling Grp., No. 1:13CV729, 2014 WL 2048127, at *4 (M.D.N.C. May 19, 2014). Therefore, the suggestion that leave to amend would be appropriate made in a plaintiff's brief opposing a motion to dismiss is not a proper motion and can be denied on that ground alone. See Cozzarelli v. Inspire Pharm. Inc., 549 F.3d 618, 630–31 (4th Cir. 2008); Intellectual Ventures I LLC v. Bank of Am., Corp., No. 3:13-CV-358-RJC-DSC, 2014 WL 868713, at *4 (W.D.N.C. Mar. 5, 2014). It is also within the court's discretion to deny a motion for leave to amend where the moving party fails to comply with Local Rule 15.1. See United States ex rel. Rostholder v. Omnicare, Inc., 745 F.3d 694, 703 (4th Cir. 2014).

Here, Plaintiffs have not filed a motion to amend, nor have they attached a proposed amended complaint. Accordingly, Plaintiffs will not be granted leave to amend, but their claims for which they seek the potential to re-plead will be dismissed without prejudice. Cf. United States ex rel. Radcliffe v. Purdue Pharma L.P., 737 F.3d 908, 920 (4th Cir. 2013) (noting that dismissal with prejudice would be improper where amendment would not be futile or otherwise improper).

15

**III. CONCLUSION**

For the reasons stated,

IT IS THEREFORE ORDERED that Defendants' motion to dismiss (Doc. 17) is GRANTED, and Plaintiff's § 1983 claims against DPS, CE, and named Defendants in their official capacities are DISMISSED WITH PREJUDICE, and Plaintiff's § 1983 claims against named Defendants in their individual capacities are DISMISSED WITHOUT PREJUDICE.

/s/   Thomas D. Schroeder<br>United States District Judge

September 14, 2020